# ORIGINAL

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

NORTHERN DISTRICT OF TEXAS
FILED

DEC - 6 2005

CLERK, U.S. DISTRICT COURT
By _____

| | | |
|---|---|---|
| SANDRA POOL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: 3:04-CV-2332-M |
| | § | |
| US INVESTIGATION SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment, filed August 5, 2005. In her Complaint, Plaintiff Sandra Pool ("Pool") claims she was fired in retaliation for engaging in protected activity. Pool also claims intentional infliction of emotional distress. Defendant US Investigation Services, Inc. ("USIS") denies that Pool engaged in any protected activity that could give rise to a retaliation claim, and contends that Pool was terminated for a legitimate reason. Defendant further denies the infliction of emotional distress.

Fed. R. Civ. P. 56(c) allows summary judgment only when the moving party demonstrates that there is no genuine issue as to any material fact and the party is entitled to judgment as a matter of law. Once the movant has discharged its initial burden under Fed. R. Civ. P. 56, the nonmovant must set forth specific facts, by affidavits or otherwise, that show a genuine issue for trial.

Pool began her employment with USIS in May 2002. As part of its contract with what

1

was then known as the Immigration and Naturalization Service ("INS"), USIS was required to provide several employees to process that agency's employment applications, and to perform background security checks for current and prospective INS employees and contractors. Plaintiff was one such employee assigned by Defendant to perform work for the INS, and did so for the entire period of her employment with USIS.

Plaintiff alleges that another USIS employee who periodically substituted for Pool's direct supervisor during his absences, Misty Ward, made remarks indicating her dislike of African Americans, and issued a warning to Pool to stay away from her African American co-workers. Plaintiff alleges that she did not heed Ward's warnings and, instead, continued to socialize with African American employees.

Plaintiff claims her defiance of Ward's warning, as well as her subsequent complaints to her USIS superiors concerning Ward's alleged commentary, amount to protected activity under the relevant law. Plaintiff was eventually terminated by USIS after Robert Feagin, a Federal Security Officer handling INS's side of the contract with USIS, requested that she no longer service the INS.

Defendant has produced evidence showing that Feagin did, in fact, request Plaintiff's removal, and has directed the Court's attention to Plaintiff's deposition, in which Plaintiff acknowledged that Feagin requested her removal, and that her superiors at USIS never threatened to terminate or discipline her as the result of her complaints concerning Ward. Defendant's evidence also shows that Feagin made his request because of Plaintiff's disruptive and insubordinate conduct. Clearly, a termination decision based on disruptive and insubordinate conduct could be legitimate. Pool has failed to produce any evidence indicating that Feagin's

stated rationale for his request was pretextual.

The elements of a prima facie retaliation claim under the Texas Commission on Human Rights Act ("TCHRA") are: (1) the employee engaged in protected activity, (2) the employer took adverse employment action against the employee, and (3) the employer took the adverse action based on the employee's engagement in the protected activity. Cox & Smith, Inc. v. Cook, 974 S.W.2d 217, 224 (Tex. App. – San Antonio 1998, pet. denied). To establish the causation prong of a retaliation claim, the employee need only demonstrate that the employer knew about the protected activity at the time of the adverse employment action. See Manning v. Chevron Chem. Co., 332 F.3d 874, 883 (5th Cir. 2003). The employee has the burden of establishing a prima facie case of unlawful discrimination. "If the employee satisfies this burden, the employer then has the burden of production to articulate some legitimate reason for its actions. The employee has the burden of production to rebut the employer's evidence by showing that the reasons are false or pretextual. While the burden of production shifts, the burden of persuasion that the employer intentionally discriminated against the employee remains always with the employee." Id. at 222; Medina v. Ramsey Steel, et al., 238 F.3d 674, 680 (5th Cir. 2001); see also Baker v. Am. Airlines, Inc., No. 04-11486, 2005 U.S. App. LEXIS 24328, at *10 (5th Cir. Nov. 9, 2005). "This burden requires the plaintiff to demonstrate that the adverse employment action would not have occurred 'but for' the protected activity." Medina at 684.[1]

The undisputed evidence is that USIS's client specifically requested Plaintiff's removal from her post. Defendant has produced evidence that there was no alternate job for her, and

--------

[1] The Court need not engage in the "mixed-motive" analysis explained in Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2001), as Plaintiff does not rely on that theory. See Walker v. Norris Cylinder Co., 2005 WL 2278080, fn.5 (N.D. Tex. 2005).

Plaintiff produced no contrary evidence. Even if the Court assumes that Plaintiff made out the elements of a prima facie TCHRA retaliation claim, Defendant has presented evidence of a legitimate reason for its decision to terminate Plaintiff in the form of Feagin's request. That obligates Plaintiff to present evidence that Defendant's explanation is pretextual. Given the absence of such evidence, Plaintiff's retaliation claim necessarily fails as a matter of law.

Next, the Court turns to Plaintiff's claim of intentional infliction of emotional distress. "To recover for the tort of intentional infliction, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." James v. Beltex Corp., 2004 U.S. Dist. LEXIS (N.D. Tex.– Dallas) 988, *5-6. "To qualify as extreme or outrageous, defendant's conduct must go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community." Id. at *6. "The Fifth Circuit's application of the tort of intentional infliction of emotional distress in workplace situations instructs that even racial epithets, slurs, and jokes do not rise to the level of extreme and outrageous conduct." Id. Thus, only the most unusual and egregious conduct falls within the realm of the intentional infliction of emotional distress doctrine.

In support of her claim, Plaintiff points to the same alleged conduct and comments by Defendant upon which Plaintiff bases her retaliation claim. While these factual allegations, if true, indicate morally reprehensible conduct, the Plaintiff has not produced any evidence of facts that would meet the significant legal threshold for recovery under the intentional infliction doctrine.

In addition, the Texas Supreme Court has repeatedly held that intentional infliction of

4

emotional distress is a gap-filler tort, designed to allow recovery where a plaintiff is provided

with no other means of redress. Hoffman-La Roche, Inc. v. Zeltwanger, 144 S.W.3d 438, 447

(Tex. 2004).   Under the TCHRA, a court may award compensatory damages for future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses.  TEX. LAB. CODE § 21.2585.  Additionally, a court may award

punitive damages upon a finding that an employer engaged in a discriminatory practice with

malice or reckless indifference.  TEX. LAB. CODE § 21.2585(b).  In Hoffman-La Roche, the Court

held that because the TCHRA "provides a remedy for the same emotional damages caused by

essentially the same actions, there is no remedial gap in this case and thus no support for the

award of damages under the intentional-infliction claim." *Id.* at 450; *see also* Brooks v. State

Farm Mut. Auto. Ins. Co., 2004 U.S. Dist. LEXIS 23959, *25-26 (N.D. Tex. 2004).  If "the

gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to

cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she

succeeds on, or even makes, a statutory claim." *Id.* at 448.

Plaintiff bases her intentional infliction of emotional distress claim on precisely the same

set of facts upon which she bases her retaliation claim.  As the TCHRA provides a method of

recovery for the damages Plaintiff seeks, her intentional infliction claim is inappropriate here.

Thus, even if Plaintiff had produced evidence sufficient to raise a genuine issue of material fact

as to each of the four elements of an intentional infliction of emotional distress claim, which she

did not, the Texas Supreme Court's holding in Hoffman-La Roche would, nevertheless, preclude

Plaintiff from asserting it.

Accordingly, Defendant's Motion is GRANTED.

5

**SO ORDERED.**

**DATED:** December 6, 2005.

_____

Barbara M. G. Lynn
UNITED STATES DISTRICT JUDGE

# CASE CLOSED

**CASE NUMBER:** 3:04-CV-2332-M

**DATE:** 12/6/05

**TRIAL:  YES** _____  **NO** X